IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INPUT/OUTPUT TECHNOLOGY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ( Judge Wiese) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DECLARATION OF PAUL TRUSKOWSKI

I, Paul Truskowski; hereby state as follows:

1. I am currently employed as a Senior Electronics Engineer, GS-855-13, at Fort Monmouth, New Jersey, Communications and Electronics Command (CECOM). I have been employed in this position since February 1989. My qualifications as engineer include a Baccalaureate of Science in Mechanical Engineering from the University of Evansville Class of 1983. Prior to working at CECOM I was employed as an engineer at the Navy Weapons Handling Center, at Naval Weapons Station Earle, in New Jersey.

2. My duties include providing engineering and quality management support for the TPQ-36/37 Firefinder Radar System. In my capacity as a Senior Electronics Engineer I review alternate offers to manufacture equipment and parts for the TPQ 36/37 Firefinder Radar System. I review technical data packages from offerors and assess whether or not the package demonstrates that the offeror has the technical knowledge and ability to manufacture the item successfully with a low risk of failure. I perform approximately

one such review per month for DLA. The items evaluated vary in complexity from simple components such as resistors to more complex items such as printed wiring assemblies. I have also served on five source selection evaluation boards that evaluated proposals from contractors to provide the Army with new, multi-million dollar Electronics and Communications systems. I provided technical engineering support and advice to the Source Selection Authority.

3. In May of 2006 I received a Request for Engineering Support, Defense Logistics Agency Form 339 (Form 339) from the Defense Supply Center Columbus, Ohio (DSCC). (Exhibit A) The Form 339 requested that I review, in accordance with Raytheon (formerly Hughes Aircraft) drawing 1690533, an alternate offer from Frequency Selective Networks, cage code 56662, to manufacture a backplane assembly, National Stock Number 5998-01-366-6543. Id. The backplane assembly was originally designed and manufactured by Hughes Aircraft (now Raytheon) in accordance with drawing 1690533. (Exhibit B, Tab G pp.1 & 2) The drawing is no longer proprietary to Raytheon and the United States Government now has unlimited rights to use the drawing.

4. The backplane assembly is not a complicated item to manufacture. It is a circuit board with a row of connectors used in the framework of a computer system. Circuit cards containing the active components are plugged into the backplane assembly. The subject item is made up of a circuit card, one capacitor, several connectors, wire, terminal lugs, shrink tubing, and miscellaneous hardware (screws, nuts, washers, etc.).

5. The technical data package, from Frequency Selective Networks, (Exhibit B) was submitted with the following documents for review

a. A brochure listing the types of items Frequency Selective Networks manufactures and highlights of its test lab capability.(Exhibit B Tab A pp. 4 -7)

b. Frequency Selective Networks' Supplier Quality Assurance Questionnaire. (Exhibit B, Tab B pp. 5 – 13)

c. Frequency Selective Networks' Quality Assurance Manual that provided information relating to the manufacturing and inspection process. (Exhibit B, Tab C pp. 1 – 73)

d. Frequency Selective Networks' certification stating that access is available to all required documentation. (Exhibit B, Tab F p.1)

e. Frequency Selective Networks' certification that the item will be manufactured in accordance with the drawing package. (Exhibit B, Tab F p. 2)

f. Current Raytheon drawing 1690533 for the item. (Exhibit B, Tab G)

g. A list of similar items manufactured by Frequency Selective Networks (Exhibit B, Tab L).

5. I reviewed all the information provided as part of the Frequency Selective Networks' alternate proposal. I compared this information to the current technical data package for this item. The offeror's proposal was complete and demonstrated technical knowledge of the item and was sufficient to demonstrate that the offeror could, in fact, produce the item with low risk of failure. I also reviewed information, including drawings from Frequency Selective Networks, which showed Frequency Selective Networks had manufactured similar items with similar manufacturing processes and quality verification procedures (Exhibit B, Tab L). The offeror also included an example of a more complex item that it has successfully

manufactured (Exhibit B, Tab H) in its proposal. This item is a printed wiring assembly consisting of a multi layer circuit board and numerous active components. This item was more complex because it contained active components and a wider variety of components than the backplane assembly.

6. A Critical Application Item (CAI) is an item that is essential to weapon system performance or operation, or the operating personnel as determined by the Military Services (DLAI 3200.1) (Exhibit C p.2, para. 5). The backplane assembly is not CAI. Nor is it a Critical Safety Item CSI which pursuit to Army procedures would require the manufacturer to under go First Article Testing. A CSI is a part, assembly, installation or production system with one or more critical characteristics that, if not conforming to the design data or quality requirements, would result in an unsafe condition. (Exhibit C p. 2, para. 8)

7. The item has an Acquisition Method Suffix Code (AMSC) of "C" in accordance with DFARS Procedures, Guidance, and Information (PGI) 217. (Exhibit D p. 3) This means this part requires engineering source approval by the design control activity CECOM in order to maintain the quality of the part. An alternate source must qualify in accordance with the design control activity's procedures, as approved by the cognizant Government engineering activity. The offeror certified that it was in possession or has access to all documentation required to manufacture the circuit card, (Exhibit B, Tab F), and also certifies that the part will be manufactured in accordance with the OEM drawings and is equal in form/fit function with no exceptions. Id. Testing in accordance with drawing 1690533, which the offeror included in its proposal (Exhibit B, Tab G) is sufficient to ensure the item meets requirements.

8. After considering carefully all the information and data supplied, I approved Frequency Selective Networks as a manufacturer capable of manufacturing the backplane assembly, National Stock Number 5998-01-366-6543.

9. I indicated my approval by checking the approval block in Part II, Section 20 (b) of DLA form 339 and returned the Form 339 to DSCC on or about June 13, 2006. (Exhibit E p. 3) I understand that the Form 339 apparently indicates that the form was returned to DSCC on May 24, 2006, however that date is incorrect CECOM records (Exhibit A) indicate the Form339 was received by CECOM on the May 23, 2006 and assigned to me for review and evaluation on May 24, 2006. (Exhibit E p.3)

10. I understand that Input/Output Technology Inc. asserts that the backplane assembly, National Stock Number 5998-01-366-6543 it is a qualified product list (QPL)/qualified manufacturers list (QML) item, it is not. There is no QPL/QML for this item. QPL/QML items have an AMSC of "T" and as previously stated this item has an AMSC of "C". (Exhibit D p. 5)

I swear under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief. Executed on this 6th day of June 2007.

Paul Truskowski
Senior Electronics Engineer
CECOM